Bat, J.
I have given this case the best consideration in my power, and am clearly of opinion, that there should be a new trial. Indeed, I thought the great and leading principle of this case, respecting the commencement and running on of the statute of limitation, had been settled in Dyer and Dupont’s case. That case, however, was submitted to the judges on the briefs without argument. This case, on the contrary, has been very fully and ably argued -r and I am glad of it? as it will put the law on that subject at rest.
From the manner in which this case was argued, a number of points were made by the defendant in support of the verdict, which were not mentioned in the brief, for the new trial, made out by the plaintiff’s counsel, and some of them well worthy of consideration.
1. That the deed from Brown and Wife to Alexander Rose, the ancestor, was void, she being under age at the time of the execution of it, and there being no evidence of her ever having renounced her inheritance.
2. That where a man is out of possession five years before he brings suit, he is forever barred: no matter whether the possessor gains a title by possession or not.
It seems to be necessary to get rid of these two preliminary points, before the principal ground is discussed.
1. With regard to the validity of the deed from Brown and Wife, to Rose. It is admitted in this case, that the land in dispute came to Mrs. Brown, by inheritance or descent, and that the fee was in her at the time of her intermarriage with Brown. But it is said she was under age at the time, and could not convey.
It is a very clear point in law, that an infant cannot convey a .freehold estate ; as a general position, no one can deny it. But it is equally clear, that if a woman under age marries, her infancy is merged in the coverture, her civil existence is from that moment incorporated with her husband, and all her rights are vested in him. The law gives the husband absolute power of disposing of all her *443 personal property as he pleases ; but the right of freehold and inheritance is governed by other rules. 10 Co. 42. 1 Bac. 476. Any disposition of it made by him alone, may be defeated after his death, for lie has only a life estate in it. In England, therefore, in order to bar her after his death, and her heirs, it is necessary to suffer a fine and recovery in some court of record;, which is the common mode of conveyance in that country. Cruise on Recoveries, 36. 3 Bac. 230.
In this country, however, fines and recoveries have never been in use; and a much shorter mode is established by the 29th section of the old quit-rent law, page 132 Pub. Laws, which recognizes the common mode of conveying away estates here, by the wife joining with the husband in the conveyance of lands, and after-wards renouncing her rights of inheritance or dower before a judge, or^ some other person duly appointed jor • that purpose. This mode is declared to be as effectual and valid in law, to all intents and purposes whatever, as any fine, passed in due form of law in his majesty’s court of pleas at Westminster, for conveying land in Great Britain.
From this I infer two things. 1. That the wife must consent to and join with her husband in such conveyance, in order to pass the fee : and 2. She must afterwards renounce her right of inheritance, to bar her and her heirs after the husband’s death. The first is prima facie evidence of the voluntary assent of the wife to the passing of the fee ; and the second is conclusive against her and her heirs forever. But, however, she may neglect or omit to make such renunciation, one thing is very certain, that she can take no advantage of it during the husband’s life ; nor any other person but herself, or her heirs, or some one claiming under her, after his death. The deed, therefore, in the present case, stands unimpeached as to the defendant in this action ; he has no right to call it in question.
2. The next point, whether a man who has not been in posses, sion of lands for five years, before he brings his suit, is barred or not: is one which I do not recollect to have been on any occasion, before the present, brought before this court. But if this doctrine should be established in this country, it would amount to a forfeiture of nine tenths of the land in South Carolina. It is evident to every man of common observation, that the wood lands in our country are not susceptible of possession, till actual settlement and cultivation is made on them ; and when it is considered how large a por-tionof them are in this condition, it is easy to foresee the ruinous consequences of such a principle.
*444 The right of entry, or right of possession, is all that is necessary in this country ; and, therefore, a good title to lands has ever been held sufficient to maintain trespass or ejectment, whether the owner ^as ever had actual possession or not. And upon this principle it has often been determined that a grantee, or those claiming under him from the lords proprietors, may maintain this action, though no actual entry was ever made by him into, or upon the lands since that time. Until actual entry be made by an intruder, there is no one to dispute the title. When that happens, and not till then, the plaintiff is bound to bring his action within five years against such intruder; otherwise, his right of action as against that possession, will be barred.
And this is the true construction of our limitation act, that wherever there is an adverse possession by an intruder, the action must be within five years against him. As where there is no adverse possession, no entry or action can bo necessary ; but if even a constructive possession, or entry in or upon such lands were necessary, I am of opinion that the payment of taxes, and the annual returns of them, would, and ought to be deemed sufficient for that purpose. This kind of constructive possession of lands has been held sufficient to accompany an ancient deed, and to bring it within the rule of evidence of proving itself.
3. I come now to consider the main ground in this case for the new trial: namely, whether in case the statute once begins to run, any thing shall stop it from running on, till it is a complete bar to the action ?
Upon this point, a number of English cases have been produced, as well as some from our sister States ; all of which I am bound to respect from the great legal information of the judges, who have delivered their opinions in them; and I am very far from being so presumptuous as to say that any of them are wrong; but this I think I may say, without detracting from the merits of their decisions, that our act is an exception from all those referred to in En. gland or America, and, therefore, that their determination cannot apply to the case now before us.
Mr. Rose, the ancestor of the plaintiff in this case, died in 1801; and the present defendant entered upon the lauds in question, in 1798. So that he had not possession more than three years ; consequently, two years of the time necessary to bar the ancestor, had he been living, were still to run. Now the great question is, “ did his death stop the statute from running or not?”
It is admitted that two or three of his children were infants at *445 the time of his death ; so that every thing in this case must depend upon the operation of Jaw ; and this again must depend upon the true construction of our limitation act itself, and not, upon the construction or analogy of the English acts of limitation, nor of any act of any other State in the Union.
The words in our act of limitation, of 1712, are these : “ If any person or persons, to whom any right or title to lands, tenements, or hereditaments within this province, shall hereafter descend or come, do not prosecute the same within five years after such right and title accrued, then he or they, and all claiming under him or them, shall be forever barred to recover the same. Excepting any person or persons beyond seas, or out of the limits of this province, feme covert, or imprisoned, who shall be allowed seven years to prosecute their rights and title, or claim to lands, &e., after such right and title accrued, and at no time after the said seven years : And also excepting, any person or persons that are under the age of twenty-one years; who shall be allowed to prosecute their claims at any lime within two years after they come to age, and if beyond seas, three years.” “ The act of 1788 further enlarges the time in favor of infants, and allows/¿we years after they come of age, to prosecute their rights and titles to lands.”
Herein are clear exceptions, out of the act in favor of infants, first of two years, and then of five years, after they come of full age, to bring their suits. The words in the exceptions or provisos of these acts are very plain and easy to be understood ; there is no uncertainty or ambiguity in them. From the moment of the death of an ancestor, lands go by descent to the heir at law of the ancestor; and, if he be of full age at the time of his deceased ancestor’s death, he has five years to bring his suit, before the act will bar him of his right of action. If he be an infant* under age, he has five years after he arrives at full age to commence it. The true meaning of which is, that if the heir at law wants one day of being of full age at his ancestor’s death, he has five years and one day to bring his suit. If on the other hand, he is only one day old, at the time of the death of his ancestor, he has twenty-one years, lacking one day, and five years alter, making twenty-six years, all but one day, to bring his action. This, in my opinion, is the true and proper construction of our limitation acts, when taken together. Now to apply the facts in this case to the above principles. The defendant entered on this land in 1798. Mr. Rose, the ancestor, died in 1801; no title had accrued to the defendant at the time of Mr. Rose’s death; for a right by possession, does not accrue till the last *446 moment °f the time fixed by law. It is an entire thing, and must be complete and ended before it is consummated. What then became of the fee of the land on Rose’s death 1 Land cannot be in abeyance ; it must vest somewhere on the ancestor’s death, and if he has heirs, th9 law carries it down to them. It was at.this moment, that the land in questiou, to make use of the language of the act, did “ descend and come” to the heirs of the deceased Mr. Rose. This descent found them infants, under twenty-one years of age. A new estate started into existence by the death of their father, and, from that period, the acts gave them the time mentioned in the exceptions or provisos, to commence their suits for recovery of their rights, which time is not yet expired.
As to the operation of the statute, it was arrested by the act of God, which, like a flood, swept away all the time that had accrued, or had run on against Rose in his life time, till the period of his death. At that time a new right commenced, and the time required by law to bar that new right, must be calculated from its commencement, till the youngest of Mr. Rose’s children comes of age, and five years after ; for, until the full end of that time, their right of action is preseryed to them.
No laches or neglect on the part of the children of Mr. Rose, can be imputed to them since his death ; for it is a well known maxim of the common law, that laches of suit, or entry into lands, cannot be imputed to infants, by reason of their not understanding how to pursue their rights. Plowd. 363. For which reason, neither the policy of the common law, nor the civil law, will bar them of their right, till they arrive at sufficient years of discretion ; and the act also secures it to them.
Minority is a personal privilege allowed to an infant, by operation of law, to pursue his right; and no act of his own, or of any other person, can deprive him of it, till he comes of age. But if the construction of law contended for, were allowed to be the law of the land, “ that when the act of limitation begins to run, nothing shall prevent its going on till it runs outthen it would follow, that if an adverse possessor or intruder were to enter upon lands only one day before the ancestor’s death, and remain on it for five years afterwards, an infant child might be deprived of his birthright, by the time he was five years old, by this adverse possession only; a doctrine too monstrous to be maintained or tolerated in civil society ! It is very clear, therefore, that the statute will not run during the continuance, of infancy. I Will. 145. 2 Blac. Rep. 723.
On the argument, the case of a fine was quoted from Plowd. 355, *447 where it is said that a fine and non-claim for -five years, barred the heirs of the party suffering it, from the recovery. In answer, I have to observe, that a fine gives a complete title. It has a legal commencement, and, therefore, the clqim begins to run from the moment it is suffered, and proclamation made of it; whereas in the present case, the right by possession did not exist till the last moment of its growth ; and in the meantime, and before its completion a new estate was created, upon which a privilege intervened in favor of the infants, which prevented consummation of defendant’s title by lapse of time.
Upon the whole of this case, I am against the defendant on all the grounds made on both sides of the question, and am, therefore of opinion, that the motion should be granted.
ConcocK, J.
The only point in this case, which is now to be determined, is, whether the statute of limitation, having began to run against the ancestor, shall continue its course against the heirs, they being minors.
The decision of this question must depend on the construction of our own act, the words of which are these: “If any person, or persons, to whom any right or title to any lands, tenements, or hereditaments, within this province, shall hereafter descend or come, do not prosecute the same, within five years after such rights or title accrued ; that then, he or they, and all claiming under him, or them, shall be forever barred from recovering the same : Excepting any persons beyond the seas, or out of the limits of this province, feme covert, or imprisoned, who shall be allowed the space of seven years, to prosecute their rights or claim to any lands, tenements, or hereditaments, in this province, after such right or title accrued to them, or any of them ; and at no time after the said seven years :— and also excepting any person or persons that are under the age of twenty-one years, who shall prosecute their claims at any time within two years after they come to age, and if beyond seas, three years.”
I think it cannot be doubted, but that it was the intention of the legislature to protect the rights of infants during their minority ; they being incapable of doing so themselves. With this view, two years are given after they come of age, to enable them to ascertain what their rights are ; and, when ascertained, to prosecute them.
In the exception which relates to infants, nothing is said as to the accruing of the right. There is then not any thing in the clause itself, nor is there any thing in any part of the act, which justifies the idea that the legislature did not mean to protect their rights to *448 ]ands during the whole of their minority, even if the act had began *° rul1 against their ancestors.
Let us see what are the consequences which would result from ^octr*ne contended for by the defendant. The other exception which relates to persons beyond the seas, out of the limits of the province, a feme covert, or imprisoned, gives to them seven years to prosecute their suit, after the action accrues ; which of course is to be calculated from the accruing of the action. But if an infant should not have a guardian, who should fortunately discover the trespasser on his land, and commence a suit in his behalf, the infant would not have even the five years from the accruing of the action ; for the time which had run against his ancestor would be deducted. This would be but the mockery of protection.
Again, the result of this doctrine is, that a trespass of a few days shall prevail against a just and legal estate, cast upon an infant heir. I say a trespass, for such is the law as to a possession, until it be matured by the lapse of five years. Such is the situation of the parties, plaintiff and defendant, at the death of the ancestor. It is said the doctrine should prevail, Because the infant may sue by guardian. But what does this amount to 1 It strikes at the law itself, but it is no argument for the construction contended for. The legislature certainly knew that infants might have guardians, and possibly, vigilant ones. There would, according to this argument, be no exception in their favor ; but it has ever been an object of primary importance in every code of law, to protect the rights of infants.
Here I think I might, with propriety, dismiss the case; but as it is one of great importance, and as there are authorities which seem to support the defendant, I think it my duty to examine them, and to shew that the reasons which governed in them, cannot be applied here; and that, with the exception of the North Carolina cases, they are in fact very different.
I remark in the first place, that the exceptions in favor of per. sons beyond the seas, out of the limits of the State, feme coverts, or imprisoned, continued only for seven years. If the disabilities continue beyond that time, they are nevertheless barred ; and again, that it is the object of the law to protect such from any one, but not all, of the disabilities mentioned in the act. Now, many of the cases go to this, that when the statute has begun to run against A., it shall continue its course against A., notwithstanding any other disability. If the infant neglect to commence his action two years after he come of age, he shall be barred. To this, there can be no *449 objection ; and such is the case of Doe ex demise of Count Dur. cure v. Jones, 4 T. R. p. 300, it arose under the statute of fines, which gives to infants, five years after they come of age to take their action. The disability of infancy was removed in February, 1784, and the lessor of the plaintiff, made no entry to avoid the fine, until September, 1789. The five years had expired, but the plaintiff having been imprisoned during that time, contended that he was entitled to the five years, clear of all the disabilities mentioned in the statute, which was refused by the court. This case, then, does iiot support the defendant. The next is a case of Peck and Findal, 1 Johns, p, 176, in which justice Kent says, the general rule is, that when the statute of limitations once begins to run, it continues to run, notwithstanding any subsequent disabilities. But let us see to what kind of action this doctrine was applied. It was an action brought by the master of a vessel against the trustees of the owner, who had absconded. The trustees pleaded the statute of limitations, and the court allowed it, although the owner was absent, the debt being due before he absconded, and of course the statute having begun its operation. The case from 1 Strange, p. 556, is on a simple contract debt, and the defendant pleaded the statute of limitations. The judge says, when the six years are once begun, the statute runs over all mesne obstacles, such as coverture, and infancy. The case from 2 Heno, and Mumford, p. 306, is also on a personal action, and the judge observes, that when the five years have once commenced, they run over-all mesne obstacles, such as coverture, infancy, &c. The next case is Doe ex Demise of George v. Jepon, 6 East. Rep. p. 80. This case is so different from the case before us, that I do not suppose that any more was intended by the production of it, than to shew that the Case of Count Duroure v. Jones, on which I have already commented, was considered as authority.
f In reviewing these cases, I find that there is not one of them in point; that is, directly so. There is no case in which the statute had begun to run against the ancestor, in which it has been decided, that it should continue its course against the infant heir ; though the dictum is to be found in almost all of them, particularly as relates to the statute of fines.. But, admitting that this construction has been given to the statute of fines, and the statute of James, I do not conceive that it follows that the same construction should be given to our act; for, as I before remarked, they are very different. When we take into consideration the object, as well as the language of the statute of fines, the construction is easily reconciled. It *450 was a mode of alienation, adopted by the legislature of that day, perhaps it would be more proper to say by the King, in order to weaken the overgrown power of the nobles. 2 Blac. p. 1818. There was a saving or exception in favor, first, ,of women covert, not parties to the fíne, and every person then being under the age of twenty-one years, in prison, o.ut of the realm, and not of whole mind. To have extended the time of making entry to avoid the fine, to any other than those who were infants at the time of the fine levied, would have in a great measure defeated the object of .the law but it may be said of this statute, that the construction is correct for ita lex scripta est.
It is said the statute of James is more analogous, to our act than the statute of fines, and has received the same construction with our act; and some cases in Runnington are produced.
I merely remark, that the question before us is only incidentally mentioned in some of the cases :■ and that the doctrine as laid down by Runn., is nothing more than a repetition of Lord Ellenbo-rough’s language in the case of Doe ex Dem. George v. Jesson, 6 East, p. 80.
But I will not advert to what I conceive to be the most important and material differences between the statute of James and our act. The proviso of the statute of James is as follows : “Provided, nevertheless, that if any person, or persons,.that is or shall be entitled to such writ, or hath or shall have such right or title of entry, be, or shall be at the time of the said right or title, first, descended, accrued, come or fallen, within the age of twenty-one years, &c.” Now our act says, “ shall hereafter come,” without the word first.
The statute of James makes provision for the heir of the person ■on whom the descent is first cast, if he be under the disability of infancy, and should die before the disability is removed ; and gives him ten years from the death of his ancestor to bring his action. The statute of James gives twenty years to all persons, and to the infant on whom the descent is first cast ten years, after they arrive at age, notwithstanding the twenty have expired before that period arrives. Our act gives five years to all persons, and to every infant on whom the descent may be cast, two years after he arrives at age.
Now, the construction, which is said to have been given to the statute of James, may have resulted from some one, or all of these different provisions, or from them in connexion with some other laws in relation to the same subject, or from all these in connexion with local circumstances. In England, twenty years are given to prosecute a right to land; here, only five. There, it' is difficult to *451 obtain possession of land without the knowledge of the true owher; here, nothing is more easy. In one of the cases from North Carolina, by way of shewing the impropriety of the construction contended for by' the plaintiff, an extreme case is put of one dying as soon as he arrived at age, and leaving an infant, &c. Such a mode of argument may embarrass, but can never elucidate a subject : for such is the imperfection of human nature, that laws, which in their general operation, are most salutary, do, in some individual instances, appear to operate unjustly.
If it were fair to decide the question in this way, I would ask, what would be more unjust than this? ■ A. takes possession of B’s. land to-day ; to-morrow, B. dies. The infant heir of B. is deprived of his land in five years, although neither he nor his father knew of such possession; yet, such would be the case according to the construction contended for by defendant. Again, who would be benefitled by this- construction ? Either insolvent, or dishonest men ; for he must be insolvent who purchases with a bad title. And he who takes possession of another’s land without any title, I think may be considered as dishonest. For if the time ever was, when the law meant to encourage such acts, as it was said one of the objects of our acts of limitations, was in this way to encourage settlers, which I do not believe was ever the case, it surely is now passed away. Upon the whole, I am in favor of-the motion.
1. Because the act says, where the right or title to land within this State, shall at any time hereafter descend to an infant, he shall be permitted to prosecute his rights at any time within two years after he arrives at age. And here the right did descend while the plaintiffs were minors, and was prosecuted within two years after they came of age. T say the rights descended, for although it may have been impaired by defendant’s possession, it was still a right; the title was in them; as was before observed, the defendant was only a trespasser, until five years had elapsed ; and who can say that the plaintiff’s ancestor might not have brought suit within the five years, had he lived ?
2. Because it appears to me to be the mockery of protection, to say to an infant, “ if the right which descends to you be impaired, you shall not be protected in it; but if one enter on your land during your infancy, you shall be protected until two years after you arrive at age.”
Lastly, When I consider how short the period is which the law requires to perfect a title by possession, and how easily possession may be obtained here, I feel no inclination to strain the law to favor a title thus obtained, particularly against the honest claims of infants.